# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| RUSSELL SCHUMEL, ALEX JAMES KOWALSKI, and HOLLY KAY KOWALSKI,<br><br>    Plaintiffs,<br>v.<br><br>BANK MUTUAL CORPORATION, MICHAEL T. CROWLEY, JR., DAVID A. BAUMGARTEN, RICHARD A. BROWN, MARK C. HERR, MIKE I. SHAFIR, DAVID C. BOERKE, LISA A. MAUER, ROBERT B. OLSON, THOMAS H. BUESTRIN, WILLIAM J. MIELKE, and ASSOCIATED BANC-CORP,<br><br>    Defendants. | Case No. 17-CV-1240-JPS<br><br>**ORDER** |
| THOMAS L. PAQUIN, TODD BESTUL, and DAVID BIRKHOLZ,<br><br>    Plaintiffs,<br>v.<br><br>BANK MUTUAL CORPORATION, MICHAEL T. CROWLEY, JR., DAVID A. BAUMGARTEN, RICHARD A. BROWN, MARK C. HERR, MIKE I. SHAFIR, DAVID C. BOERKE, LISA A. MAUER, ROBERT B. OLSON, THOMAS H. BUESTRIN, WILLIAM J. MIELKE, and ASSOCIATED BANC-CORP,<br><br>    Defendants. | Case No. 17-CV-1241-JPS<br><br>**ORDER** |

| | |
|---|---|
| FREDERICK WOLLENBURG, | |
| Plaintiff, | Case No. 17-CV-1242-JPS |
| v. | |
| BANK MUTUAL CORPORATION, MICHAEL T. CROWLEY, JR., DAVID A. BAUMGARTEN, WILLIAM J. MIELKE, THOMAS H. BUESTRIN, ROBERT B. OLSON, MARK C. HERR, DAVID C. BOERKE, RICHARD A. BROWN, LISA A. MAUER, MIKE I. SHAFIR, and ASSOCIATED BANC-CORP, | **ORDER** |
| Defendants. | |

As noted in the Court's prior order, Plaintiffs have filed motions to remand each of these actions to the Milwaukee County Circuit Court, from where they were removed to this Court. (Docket #11).[1] Defendant Associated Banc-Corp ("Associated"), the removing defendant, opposes Plaintiffs' request. (Docket #14). Defendant Bank Mutual ("Bank Mutual") and its individual directors (the "Directors") also contest the motion. (Docket #13). Plaintiff replied to both opposition briefs. (Docket #15). For the reasons stated below, the motions to remand must be granted.

Bank Mutual and Associated are planning to merge, with Associated paying almost half a billion dollars for the privilege. (Docket #1-1 at 13-15). As part of the transaction, Bank Mutual's shareholders will be allowed to convert their shares into shares of Associated, at a little more than a 2:1

---

[1] For brevity's sake, and because the filings in each case are materially identical, the Court's docket citations will be exclusively to the *Schumel* case (17-CV-1240) unless otherwise noted.

ratio. *Id.* at 14. Plaintiffs, individual shareholders in Bank Mutual, believe that this payment and conversion ratio "is unfair and grossly inadequate" consideration. *Id.* at 5, 16. Plaintiffs allege, on behalf of themselves and all Bank Mutual shareholders, that the Directors violated their fiduciary duties to the shareholders by agreeing to the transaction. *Id.* at 9-10, 16-17. Namely, the Directors entered into "certain onerous and preclusive deal protection devices" that "all but ensure that the [transaction will be] successful and no competing offers will emerge" for Bank Mutual. *Id.* at 16.

Plaintiffs state two causes of action. The first is, of course, for breach of fiduciary duties by the Directors for "fail[ing] to take steps to maximize the value of Bank Mutual to its public shareholders." *Id.* at 18. The second targets Associated for knowingly aiding and abetting the Directors in breaching their fiduciary duties. *Id.* at 19.[2] Bank Mutual is a named defendant, but it is not expressly implicated in either cause of action. It is before the Court, presumably, because Bank Mutual would be party to an injunction issued prohibiting the merger, which is part of Plaintiffs' request for relief. *Id.* at 19-20.

Associated removed each of these actions pursuant to the Court's diversity jurisdiction, provided for in 28 U.S.C. § 1332(d), as modified by the Class Action Fairness Act of 2005 ("CAFA"). The Seventh Circuit recently explained CAFA's purpose and implementation:

> Congress enacted CAFA in 2005 "to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, ⸺ U.S. ⸺, 135

---

[2]The *Wollenburg* complaint also references an allegedly deficient proxy statement filed with the SEC by Bank Mutual. *Wollenburg v. Bank Mutual Corp. et al.*, 17-CV-1242-JPS (E.D. Wis.) (Docket #1-1 at 5-6, 21-26). The causes of action, however, remain the same. *Id.* at 26-28.

S.Ct. 547, 554, 190 L.Ed.2d 495 (2014). To meet these objectives, CAFA expands jurisdiction for diversity class actions by creating federal subject matter jurisdiction if: (1) a class has 100 or more class members; (2) at least one class member is diverse from at least one defendant ("minimal diversity"); and (3) there is more than $5 million, exclusive of interest and costs, in controversy in the aggregate. 28 U.S.C. § 1332(d); *Hart v. FedEx Ground Package Sys.*, 457 F.3d 675, 677 (7th Cir. 2006). Consistent with this purpose, CAFA also loosens removal requirements: any defendant, including in-state defendants, can remove; a defendant can remove even if all defendants do not consent; and there is no one-year limit on the timing of removal. 28 U.S.C. § 1453(b).

CAFA does not alter the burden of establishing the district court's jurisdiction. As in removal in non-CAFA diversity actions, the party asserting federal jurisdiction under CAFA must establish that the requirements of § 1332(d) are satisfied. *Hart*, 457 F.3d at 679.23

*Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017). Associated's removal appears to fit with the *prima facie* requirements of CAFA, and Plaintiffs do not argue otherwise.[3]

CAFA jurisdiction is subject to exceptions, however. CAFA's expansion of diversity jurisdiction does not apply

> to any class action that solely involves a claim—
>
> (A) concerning a covered security as defined under 16(f)(3)1 of the Securities Act of 1933 (15 U.S.C. 78p(f)(3)2) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb(f)(5)(E)) [the "Covered Security Exception"];

---

[3]With almost 46 million outstanding shares of common stock, it is all but certain that the putative class has more than 100 members and at least one of those shareholders is diverse from one of the defendants. (Docket #1 at 4-5). As for the amount in controversy, by any method of calculation it exceeds $5 million. *Id.* at 5-6. Plaintiffs do not dispute this. *See generally* (Docket #15).

(B) that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized [the "Internal Affairs Exception"]; or

(C) that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and the regulations issued thereunder) [the "Fiduciary Duty Exception"].

28 U.S.C. § 1332(d)(9).

Plaintiffs maintain that all three exceptions apply to this case, but the vast majority of the parties' efforts are directed at the Fiduciary Duty Exception. Plaintiffs argue that their complaint is based entirely on "the rights, duties (including *fiduciary duties*), and obligations relating to or created by or pursuant to" the shares they hold (which are qualifying securities). 28 U.S.C. § 1332(d)(9)(C) (emphasis added). Associated responds by focusing on the impact of the word "solely" in the opening phrase of Section 1332(d)(9) ("Paragraph (2) [the CAFA jurisdiction paragraph] shall not apply to any class action that *solely* involves a claim-- [exceptions listed]") (emphasis added). Associated does not contend that the fiduciary duty claim, alleged against the Directors, would be removable under CAFA. Instead, Associated's removal is premised on Plaintiffs' addition of the aiding-and-abetting claim. Plaintiffs maintain that this claim must also fall within the Fiduciary Duty Exception because it relates to their shares and could not exist but-for Plaintiffs' ownership thereof. Associated counters that the aiding-and-abetting claim is distinct from the fiduciary duty claim in two meaningful ways:

> *First*, the duty allegedly breached by Associated was neither fiduciary nor imposed by a security; and,
>
> *Second*, Associated, an alleged aider and abettor, is a stranger to the relationship between the class members and the board members.

(Docket #14 at 19).

Associated further emphasizes that the elements of an aiding-and-abetting claim appear distinct from the underlying breach of fiduciary duty. As this Court explained in a similar action, "[t]he tort of aiding and abetting in Wisconsin requires the defendant: (1) 'undertake[ ] conduct that as a matter of objective fact aids another in the commission of an unlawful act; and (2) consciously desires or intends that his or her conduct will yield such assistance.'" *Dixon v. Ladish Co., Inc.*, No. 10-CV-1076-JPS, 2011 WL 719018, at *2 (E.D. Wis. Feb. 22, 2011) (quoting *Edwardson v. Am. Family Mut. Ins. Co.*, 589 N.W.2d 436, 440 (Wis. App. 1998)). An aiding-and-abetting claim only lies when the aider knowingly advocates for or assists in the breach, which requires more than mere "attempts to reduce the sale price through arm's-length negotiations." *Id.* (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001)). Associated argues that, even if Plaintiffs' allegations were proven entirely true, its conduct would be at best tangential to the fiduciary duties which run from the Directors to Plaintiffs.[4]

Associated loses sight, however, of the incredibly broad reach of the Fiduciary Duty Exception. It is not limited to removing claims for breach of

---

[4] The Court's characterization of Plaintiffs' complaint is generous. *Dixon* dismissed similar allegations for failure to state a plausible aiding-and-abetting claim. *Dixon*, 2011 WL 719018, at *2-3. Plaintiffs' position might be bolstered with allegations that Associated was more a puppeteer than influencer of the Directors in the merger deal, but such assertions are not found in the present pleadings.

fiduciary duty beyond CAFA's grasp (which it does so expressly). The exception applies to any claims which "relate to . . . fiduciary duties," and the aiding-and-abetting claim certainly does. 28 U.S.C. § 1332(d)(9)(C) (punctuation altered). It goes on to state that the fiduciary duties at issue must be "relat[ed] to or created by or pursuant to" the shares. *Id.* Associated cannot dispute that the Directors' fiduciary duties run to Plaintiffs pursuant to their Bank Mutual shares. This resolves both of Associated's above-noted distinctions. Associated's "duty" (the duty to avoid aiding-and-abetting, assumedly) is directly related to the Directors' fiduciary duty. Its status as a stranger to the fiduciary relationship, while noteworthy, is not an element of the Fiduciary Duty Exception, which says that any "claim . . . that relates" to a fiduciary duty is excepted, without reference to a particular party. While not so obviously within the bounds of Fiduciary Duty Exception as a fiduciary duty claim itself, the Court finds that the aiding-and-abetting claim can find shelter therein.

Put differently, the fiduciary duty claim finds a safe harbor in the Fiduciary Duty Exception. The aiding-and-abetting claim, by contrast, sits at the edge of the exception's reach. It does, nevertheless, directly "relate to" and rely upon the fiduciary duty claim, and so must likewise be excepted from CAFA removal. This ties back to the "solely" language which opens the three exceptions. Plaintiffs' complaint solely involves claims which fit within the Fiduciary Duty Exception, one which inarguably does so, and another which is sufficiently related to that claim to fall within the exception's expansive scope.

Associated responds that this reading of the Fiduciary Duty Exception conflicts with some circuit precedent. The Court concedes that as a general matter, the Second Circuit has attempted to limit the exception's

broad reach. *See, e.g., Estate of Pew v. Cardarelli*, 527 F.3d 25, 30-33 (2d Cir. 2008). Nevertheless, this Court is not bound by the law of other circuits. Associated cites no factually analogous case—meaning one involving a breach of fiduciary duties in a merger transaction, brought by shareholders against the directors of the issuer *and* a third-party aider-and-abettor—from the Seventh Circuit Court of Appeals that is consistent with its interpretation of the exception.[5] In the absence of such controlling authority,

---

[5]*Cardarelli* is also distinguishable on this basis, but a preliminary discussion of that case is necessary to demonstrate why. The *Cardarelli* plaintiffs sued under New York's consumer fraud statute for misrepresentations that influenced them to purchase securities. *Cardarelli*, 527 F.3d at 27. In attempting to position this claim vis-à-vis Section 1332(d)(9)(C), *Cardarelli* dissected the exception's language. *Id.* at 31. The Second Circuit focused not on the first "relates to" clause, but rather the second "relating to or created by or pursuant to" clause. *Id.* The court concluded that to give appropriate meaning to the exception, the "relation" referenced in the second clause must be limited to "claims grounded in the terms of the security itself, the kind of claims that might arise where the interest rate was pegged to a rate set by a bank that later merges into another bank, or where a bond series is discontinued, or where a failure to negotiate replacement credit results in a default on principal." *Id.* at 32. *Cardarelli* drew this limitation from CAFA's legislative history, which suggests that Congress intended the Fiduciary Duty Exception to apply "'only [to] litigation based solely on . . . the rights arising out of the terms of the securities issued by business enterprises.'" *Id.* at 33 (emphasis in original) (quoting S. Rep. No. 109–14, at 45 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 42–43). Under this formulation, the court held that the consumer fraud claim did not fall within the exception. *Id.* at 32. In other words, the plaintiffs did not seek to "enforce the rights of the Certificate holders *as* holders," but instead advanced the rights of purchasers. *Id.* (emphasis added).

First, as applied here, this Court disagrees that the exception's plain language is so ambiguous as to warrant such nuanced scrutiny. Second, and more importantly, *Cardarelli*'s primary concern was with the second "relating to" clause in the Fiduciary Duty Exception, not the first "relates to" clause on which this Court's holding is based. The fiduciary duty claim in the present case clearly relates to the Bank Mutual shares in accordance with *Cardarelli*'s interpretation of the second clause, and is in fact expressly provided for in the exception. Plaintiffs are certainly seeking to enforce their rights as holders of Bank Mutual shares, not as purchasers or otherwise. Thus, for our purposes, the operative "relates to"

the Court is bound to apply CAFA's plain language in a straightforward manner.[6]

The outcome here is far from obvious. Regrettably, CAFA itself is the product of poor draftsmanship, and the opinions interpreting it are either

---

clause is the first, not the second. The Court's ruling here interprets the first "relates to" clause, left relatively untouched by *Cardarelli*, in accordance with its broad definition.

[6]The relevant Seventh Circuit decisions located by the Court and the parties are few and distinguishable. *Katz* involved a merger, but the parties disagreed on whether the case was one for breach of the promises made in the issuance of the security, or whether it was simply a claim for fraud. *Katz v. Gerardi*, 552 F.3d 558, 563 (7th Cir. 2009). The court did not decide for them, but instead remanded to the district court so that the plaintiff could clarify his position. *Id.* Though the lawsuit was brought against the issuer and some other parties involved in the merger, the court did not treat the distinction as meaningful. *Id. Bezich* and *Appert* were actions directed solely against the issuer of the security, and like *Cardarelli*, were primarily concerned with the second "relating to" clause rather than the first. *Lincoln Nat. Life Ins. Co. v. Bezich*, 610 F.3d 448, 448-49, 451 (7th Cir. 2010); *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 613-14, 619-21 (7th Cir. 2012).

Similarly, none of the other circuit opinions dealing with the Fiduciary Duty Exception explicitly addresses whether the first "relate to" clause can sweep in an aiding-and-abetting claim against a third party. *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 24-26, 30 (2d Cir. 2010) (applying exception to security holders who sued to enforce an agreement to repurchase the shares, where the agreement came with the purchase of the securities but was not technically on the face of the certificates themselves); *BlackRock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assur. Corp.*, 673 F.3d 169, 177-79 (2d Cir. 2012) (applying exception to claim regarding a trustee's good faith execution of its duties, and further holding that "duties superimposed by state law as a result of the relationship created by or underlying the security fall within the plain meaning of the [exception], which expressly references 'duties (including fiduciary duties).'"); *Eminence Investors, L.L.L.P. v. Bank of New York Mellon*, 782 F.3d 504, 508-10 (9th Cir. 2015) (applying exception to an action for breach of fiduciary duty against a trustee, though without third-party involvement, finding that "[t]o hold that the securities exception does not apply to such causes of action would run counter to the statute's text, which expressly includes causes of action based on 'fiduciary duties.'").

not factually analogous, supply even more confusion with their nuanced and potentially conflicting holdings, or suffer from the lack of any meaningful analysis at all. This lack of clarity is particularly impactful in the realm of federal court jurisdiction, which is of course limited. The Court's doubts must be resolved in favor of rejecting jurisdiction. *Hart*, 457 F.3d at 679. If Congress had intended a different result, they could have carefully crafted CAFA's language more succinctly.

In the end, without controlling Seventh Circuit authority, the Court is constrained to rely on the plain text of the statute.[7] That language suggests that the aiding-and-abetting claim is sufficiently "relate[d] to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security" to warrant application of the Fiduciary Duty Exception.[8] The Court must therefore apply the exception

---

[7]In addition to the circuit opinions they cite, both parties rely on district court opinions from inside and outside this Circuit. In attempting to "unravel some of the mysteries of CAFA's cryptic text," the Court finds it most prudent to avoid reliance on non-precedential decisions. *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1187 (11th Cir. 2007); *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("'A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.'") (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed. 2011). Accordingly, the Court takes little account of whether its order agrees or disagrees with those decisions.

[8]The Court has not addressed which side bears the burden of persuasion with regard to application of the exceptions. The parties disagree, and the Seventh Circuit has not provided the clearest of guidance. In March 2012, *Appert* expressly placed the burden on the proponent of the exceptions, here Plaintiffs. *Appert*, 673 F.3d at 619. It further suggested that the exceptions should be interpreted narrowly. *Id.* at 621. Nevertheless, in November 2012, the *LaPlant* court stated that

> [a]lthough [the Second Circuit] has held that the statutory language reflects a preference for remand to state court, . . . this circuit's approach is to read the exceptions in § 1332(d) . . . without a presumption for either remanding or retaining jurisdiction. We try

and grant the motions to remand.⁹ The parties' other pending motions, to dismiss and to stay, will be denied as moot.

Accordingly,

**IT IS ORDERED** that Plaintiffs' motions to remand (Docket #4 (all actions)) be and the same are hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants' motions to dismiss (Docket #16 and #18 (Schumel); Docket #17 and #19 (Paquin and Wollenburg)) be and the same are hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiffs' motions to stay (Docket #20 (Schumel); Docket #21 (Paquin and Wollenburg)) be and the same are hereby **DENIED as moot**; and

The Clerk of the Court is directed to take all appropriate steps to effectuate the remand of this case back to the Milwaukee County Circuit Court.

---

        to give the statutory language a natural meaning in light of its context, without a thumb on the scale. *See, e.g., Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609 (7th Cir. 2012); *Katz v. Gerardi*, 552 F.3d 558 (7th Cir. 2009).

*LaPlant v. Northwestern Mut. Life Ins. Co.*, 701 F.3d 1137, 1139 (7th Cir. 2012). *LaPlant*'s citations are curious; *Appert* says the burden rests with the remand-seeking plaintiff, and *Katz* says nothing at all on the subject. Though *Appert* gives more specific treatment, *LaPlant* is the later-decided case. In the end, the Court need not resolve the conflict; if Plaintiffs bore the burden of persuasion, they carried it.

    ⁹Defendants refer to a fourth case involving this merger, *Parshall v. Bank Mutual Corp.*, 17-CV-1209-JPS (E.D. Wis.), as being related to the three addressed here. (Docket #14 at 8-10). Whether or not the case is truly related—it is focused only the allegedly improper SEC disclosures and says nothing about fiduciary duties—there has been no service of process in the case or any motion practice. That case must remain pending for the time being.

Dated at Milwaukee, Wisconsin, this 11th day of October, 2017.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge